## Bladen *versus* Philadelphia.

1. City *v.* Flanigen and City *v.* Johnson, 11 Wright 21 and 382, affirmed.

2. Words of statute which are affirmative and relate to the manner in which power or jurisdiction vested in a public officer or body is to be exercised and not to the power itself, may be construed directory.

3. Negative words which go to the power or jurisdiction are not construed to be directory.

4. The board of health of Philadelphia is authorized to appoint officers and fix their compensation. Bladen was appointed clerk in 1858; the board of health in 1865 fixed the clerk's compensation at $2000 after January 1866: the councils appropriated for the payment of the clerk's salary only $1400 per annum. The Act of April 21st 1858, directed that no debt, &c., should be binding on the city unless authorized by law or ordinance, and there be a sufficient previous appropriation made by councils. *Held*, that Bladen could not recover beyond $1400.

February 4th 1869. Before THOMPSON, C. J., AGNEW, SHARS-WOOD and WILLIAMS, J. READ, J., at Nisi Prius.

Error to the District Court of *Philadelphia:* No. 442, to January Term 1868.

This was an action of assumpsit, brought November 30th 1867, by Washington L. Bladen against The City of Philadelphia. On the 4th of January 1868, a case stated was filed embodying the following facts:—

On the 29th of January 1818 a board of health was established for the city of Philadelphia: the 1st section of the incorporation provided that "the board should have power to appoint such officers and servants as may be necessary to attend the health office, the Lazaretto, &c., and to allow and pay said officers and servants so appointed such compensation for their respective services as the said board shall deem just and proper."

Immediately after the passage of said law, "The Board of Health" appointed an officer to attend at the health office, by the style of chief clerk.

By section 16 of an act passed February 2d 1854, Pamph. L. 31, it is enacted: "* * * The qualified voters of each of the wards shall elect one citizen, &c., to serve as a member of the board of health, &c. They shall supersede the present members and officers of the board of health, &c., and all laws of this Commonwealth creating, governing and regulating the board of health, not inconsistent herewith, shall continue in force and operation, and shall govern and regulate the board of health of the city of Philadelphia. * * * All sums of money due, payable to, or received by the board of health, shall be paid into the city treasury; and all sums expended by or for the purposes of the board, shall be paid by the city treasurer, upon orders drawn under appropriations regularly made by councils. * *"

By section 50 of the act last aforesaid, it is enacted: "That it

[Bladen v. Philadelphia.]

shall be the duty of city councils to provide by ordinance for the establishment and regulation of all the departments indicated by this act and other laws in force in said city, under the proper heads, &c., to wit: for law, &c., police, &c., gas, &c., health, &c., and such others as may from time to time be needful."

By an act approved April 7th 1859, Pamph. L. 400, a new mode was established for the selection of the board of health, but it was provided by section 6, that after their organization, "they shall then assume and exercise all the powers, duties, rights, liberties, authorities and immunities of the present board of health."

"The plaintiff was appointed chief clerk in November, 1858, and from then continued in said office to November 1st 1867, at which time he resigned.

"The board of health in 1865, fixed the compensation for chief clerk, from and after January 1st 1866, at the sum of $2000 annually.

"The councils of Philadelphia have appropriated for said purpose only the sum of $1400 annually, which said sum has been paid plaintiff.

"If the court shall be of opinion that the plaintiff is entitled to recover as and for his salary at the rate established by the board of health, notwithstanding the failure of the councils to appropriate sufficient for said purpose, then judgment to be entered for said plaintiff, the damages to be assessed by the prothonotary in accordance herewith; if otherwise, then for the defendant."

By the 5th section of the Act of April 21st 1858, Pamph. L. 386, it is enacted: "that no debt or contract hereafter incurred or made shall be binding upon the city of Philadelphia unless authorized by law or ordinance, and an appropriation sufficient to pay the same be previously made by councils."

The District Court (Thayer, J.) entered judgment for the defendant, which on removal to the Supreme Court the plaintiff assigned for error.

*D. W. Sellers*, for plaintiff in error.

*J. Lynd*, for defendant in error.

The opinion of the court was delivered, March 4th 1869, by

SHARSWOOD, J.—The control of the city councils over all the departments of the municipal government of Philadelphia, in the matter of the disbursements of money, as well for work done and materials furnished, as for the salaries and wages of officers and employees, was finally settled by the judgments of this court in The City v. Flanigen, 11 Wright 21, and The City v. Johnson, Id. 382. Both those decisions were contrary to and in reversal

10 P. F. SMITH—30

of my own ruling in the court below; but I am bound in candor to say, that subsequent reflection has satisfied me that I was in error, and the Supreme Court were right. But if I were otherwise, I would be none the less obliged to conform my present judgment to the principles authoritatively established in those cases.

To distinguish this case from them would be to make a distinction where there is no difference. It is said as to The City *v*. Flanigen, that the receiver of taxes was an officer wholly municipal; but this a mistake, as he was then charged with the collection of state as well as city taxes. As to The City *v*. Johnson, it is argued, that the specific salary of the teacher suing was not limited, but the provision of the ordinance was, that a certain amount only should be appropriated for the salaries of teachers, with a direction that the controllers should scale the salaries accordingly—a circumstance which, if it has any weight at all, makes this case stronger than that; for here there was a specific appropriation of a certain sum for the payment of the plaintiff in error. His learned and acute counsel, who could not fail to discover a distinction if any existed, after this faint effort in his printed argument in that direction, fairly abandoned it, and took the only ground which was left to him, that in those cases too much importance had been given to mere directory provisions for the payment of money by the city treasurer. It would not perhaps be easy to lay down any general rule as to when the provisions of a statute are merely directory, and when mandatory or imperative. Where the words are affirmative, and relate to the manner in which power or jurisdiction vested in a public officer or body is to be exercised, and not to the limits of the power or jurisdiction itself, they may and often have been construed to be directory; but negative words which go to the power or jurisdiction itself have never, that I am aware of, been brought within that category. "A clause is directory," says Taunton, J., "when the provisions contain mere matter of direction and no more; but not so when they are followed by words of positive prohibition:" Pearse *v*. Morrice, 2 Ad. & El. 96. The words of the 5th section of the Act of April 21st 1858, Pamph. L. 386, are words of positive prohibition. "No debt or contract hereafter incurred or made shall be binding upon the city of Philadelphia, unless authorized by law or ordinance, and an appropriation sufficient to pay the same be previously made by councils." The plaintiff was appointed chief clerk of the board of health in November 1858. He accepted the place under this appointment at the salary fixed by them, subject to this statute. This was his contract, on which he now sues. By it, the debt of the city he claims to recover was incurred. He alleges that there was a previous law which empowered the board to fix his salary: Act of January 29th 1818, § 1,

[Bladen *v.* Philadelphia.]

Pamph. L. 39; but admitting that the provision to which he refers was then in force, he does not pretend that the other member of the sentence had been complied with; that there had been an appropriation sufficient to pay the same previously made by councils. Had the statute enacted expressly that without such appropriation the contract would be void and no debt incurred, it could not, so far as the liability of the city is concerned, have been more mandatory or imperative than it is.

Of course, we are not to be understood as holding that the city councils have any power to withhold payment from a state officer whose salary or perquisites are fixed by law, such as the officers of the courts, jurors, or indeed any of the necessary expenses of the administration of justice. The municipality has no more control over such matters in this city, than commissioners have in the several counties of the Commonwealth. They can no more be reduced or denied than can the amounts ascertained in the fee bill when the city has occasion either to claim or defend in the courts, or transact other business in the offices. These claims stand on an entirely different ground.

Judgment affirmed.