## Commonwealth *v.* Zillafrow, Appellant.

*Murder—Criminal law—Jury—Drawing jurors.*

The provision of the Act of April 10, 1867, sec. 2, P. L. 62, which requires that jurors shall be selected from " the whole qualified electors of the respective county at large," is not violated by the fact that the quotas of electors to be selected for jury duty were in the first instance allotted to

the several election districts of the county, in proportion to the number of qualified electors in each, and further that the names of those who 'had served as jurors within the preceding three years were excluded from selection.

Statutory provisions such as above noted, which do not prescribe or bear upon the substance of any duty, but merely on the manner of its performance are directory only.

*Criminal law—Murder—Jury—Grand jury—Drawing jury—Act of April* 14, 1834, *sec.* 120, *P. L.* 333.

It is no ground for reversing a judgment on a verdict of guilty of murder in the first degree, that the sheriff and jury commissioners having in their hands three venires to draw at the same time for a grand jury, a petit jury in the criminal court, and a traverse jury in the common pleas, did not in drawing them follow the order named in the 120th section of act of April 14, 1834, when it is not alleged that there was any improper motive on the part of the officials or any injury to the prisoner.

*Criminal law—Murder—Sheriff—Special venire—Sheriff as witness.*

The fact that the sheriff has been subpœnaed as a witness by the commonwealth in a murder case, does not disqualify him to summon a special venire in such case.

*Criminal law—Murder—Jury.*

The fact that a jury in a murder case were during the recess of the court placed in a room where they could look into the jail and see the prisoner playing cards, is not a ground for a reversal of a verdict of guilty of murder, where there is nothing to show that the prisoner was injured thereby. The action of the sheriff, however, was indiscreet, as such practice might easily lead to abuse. It should therefore be avoided.

Argued Nov. 2, 1903. Appeal, No. 151, Oct. T., 1903, by defendant, from judgment of O. & T. Armstrong Co., June T., 1903, No. 1, on verdict of guilty of murder in the first degree in case of Commonwealth v. Harvey M. Zillafrow. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Indictment for murder. Before PATTON, P. J.
Verdict of guilty of murder of the first degree.

*Errors assigned* were the various rulings mentioned in the opinion of the Supreme Court, and (8) in issuing a special venire, members of the regular panel having been excused without sufficient reason and without defendant's consent; because the special venire directed the sheriff to summon from

the bystanders or county and was not limited to one or the other and because elisors were not appointed to make the selection.

*R. L. Ralston* and *J. H. McCain*, with him *Austin Clark* and *W. J. Christy*, for appellant.

*Rush Fullerton*, district attorney, and *Ross Reynolds*, with them *J. D. Daugherty* and *J. P. Culbertson*, for appellee.

OPINION BY MR. CHIEF JUSTICE MITCHELL, November 11, 1903:

The numerous assignments of error are all extremely technical. Not one of them has any bearing on the guilt or innocence of the prisoner and no one indicates in the remotest manner any deprivation of any of his rights. The killing, which is not denied is shown by the evidence to have been deliberate and premeditated, and the only show of defense was insanity, the evidence of which was so flimsy that even his over zealous counsel have not ventured to base any assignment of error on that branch of the trial. In such cases this court has set itself resolutely against efforts for reversal which have no quality of substantial justice to rest upon. All of the assignments might well be dismissed as immaterial, but as they appear to be of a class raised with increasing frequency, we think proper to discuss them sufficiently to make an end of them.

The first four specifications of error relate to the alleged disregard of the statutory direction that the jurors shall be selected from "the whole qualified electors of the respective county at large:" Act of April 10, 1867, sec. 8, P. L. 62. The purpose of this enactment is, with a view to freedom from local influence or prejudice, to secure juries as far as practicable from the whole county and also, in furtherance of the same object, to distribute the educational benefits as well as the burdens of jury duty in the same way: Com. v. Valsalka, 181 Pa. 17, 24. It is alleged in the present case that the quotas of electors to be selected for jury duty were in the first instance allotted to the several election districts of the county, in proportion to the number of qualified electors in each, and further that the names of those who had served as jurors within the preceding three

years were excluded from selection.    The facts as to such mode of selection in this case are disputed by the commonwealth, and are by no means clearly established by the evidence in the record.    But even assuming that the facts are as averred it does not appear that the method pursued contravenes the intent of the statute.    It secures an equal proportionate representation of all parts of the county in the jury wheel and lessens the probability that any particular panel may, by the bunching of the name slips, or insufficient mixing in the wheel, be selected altogether from a particular vicinity.    The exclusion of the names of those who have previously served within three years, has the same tendency to distribute the jury service equally over the whole county in accordance with the intent of the statute, and to prevent the same persons serving repeatedly and having the court thus incur the suspicion if not the risk of being served by " professional jurors."    As confirmatory of this view of the statutory intent it may be noted that in the county of Philadelphia the act of April 20, 1858, provides that no citizen who has been drawn and has served as a juryman for one full term shall be liable to be drawn again for the succeeding period of three years.

We have thus noticed these objections in detail, to make it entirely clear, that they do not involve any infraction of the prisoner's rights.    The statutory provisions alleged to have been disregarded, though not followed literally, were not contravened as to spirit or intent.    The provisions themselves are directory in character.    They do not prescribe or bear upon the substance of any duty, but merely upon the manner of its performance, and do not differ in this respect from other provisions of the same or analogous acts which have already been held to be directory only: Com. v. Valsalka, 181 Pa. 17 ; Rolland v. Com., 82 Pa. 306 ; Clark v. Com., 29 Pa. 129; Bladen v. Philadelphia, 60 Pa. 464.

The cases cited for the appellant, Brown v. Com., 73 Pa. 321, and Curley v. Com., 84 Pa. 151, related to the proper sealing of the jury wheel, a matter of substance to guard against tampering with the names after selection and deposit in the wheel.

The fifth and sixth specifications relate to the alleged disregard of the 120th section of the act of April 14, 1834, in that the sheriff and jury commissioners having in their hands three

venires to draw at the same time, for a grand jury, a petit jury in the criminal court, and a traverse jury in the common pleas, did not in drawing them follow the order named in the statute. It was not alleged that there was any improper motive on the part of the officials, or any injury to the prisoner, and as the statutory provisions are directory only the disregard of them was immaterial. The same may be said in brief of the eighth specification. The seventh specification, the only one involving any really new question, relates to the order of challenges by the commonwealth and the prisoner respectively as affected by the Act of July 9, 1901, P. L. 629. This has been considered and decided at the present term in Com. v. Conroy, ante, p. 212.

The ninth, tenth, eleventh, twelfth and thirteenth specifications are to portions of the opinion of the learned judge below, and to his overruling the motions for new trial and for arrest of judgment. The opinion is not the subject of assignment for error, and there is nothing in it or in the evidence to call upon us to exercise the exceptional power as to new trials conferred by the act of 1891. But there is no merit in the objections even if they were properly assigned. The sheriff was the officer of the law to whom the special venire was required to be directed, and the fact that he had been subpœnaed as a witness by the commonwealth did not make him incompetent for that duty. If the sheriff could be disqualified by serving him with a subpœna, the process of the law could be taken out of the hands of its responsible officers at any trial by the interest or whim of a party. It was not known to the court in this case when the special venire for talesmen was issued, that the sheriff had been subpœnaed. If thereafter it had appeared that the prisoner's rights or his interests were prejudiced, it would have been matter for the court's consideration on the motion for a new trial. But nothing of the kind appeared or was even charged. The sheriff testified that he never had any conversation with the prisoner, and to the question, " Did you see anything that would lead you to believe that he was of unsound mind ? " answered, " No, I can't say that I did in there," and on cross-examination to the question, " The fact is you would not like to say he was sane or that he was insane ? " he answered,

"I would not." This was too trivial to require further notice.

The placing of the jury during the recess of the court in a room where they could look into the jail and see the prisoner playing cards, was apparently an accidental result of keeping them in the sheriff's house. The fact was unknown to the commonwealth or the court until after the trial, and was therefore only available on the motion for a new trial. The learned judge below was of opinion that the evidence on this point did not affect the substantial interests of the prisoner, and was not of sufficient importance to justify interference with the verdict. In this view we concur. But the action of the sheriff was indiscreet, and such practice might easily lead to abuse. It should therefore be avoided.

The remaining specifications relating to the charge of the judge on the subject of the testimony of the experts and on the admissions by the prisoner, do not require discussion.

The judgment is affirmed and the record remitted to the court of oyer and terminer for the purpose of execution.