# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Mr. W. B. King, Legislative Accountant
Joint Legislative Committee
Austin 11, Texas

Dear Sir:

Opinion No. 0-6248
Re: Can the office of the
Legislative Accountant
accept a late filing date
of an application when such
contract was cancelled after
October 1 of the scholastic
year?

We acknowledge receipt of your letter of recent date,
reading as follows:

"House Bill No. 176, passed at the Regular
Session, Acts of the 48th Legislature, gives certain
school districts rights to participate in the Equaliza-
tion Fund unless they are prohibited by the foregoing:

"Article 8, Section 1 of House Bill No. 176,
reads in part as follows:

"'Upon the agreement of the board of
trustees of the districts concerned or
on petition signed by a majority of the
qualified voters of the district and
subject to the approval of the county
superintendent, and the State Superin-
tendent, a district which may be unable
to maintain a satisfactory school may
transfer its entire scholastic enroll-
ment for one year to an accredited school
of higher rank. If the receiving school
receives State Aid, the scholastic census
rolls both white and colored shall be
combined, the per capita apportionment
shall be paid direct to the receiving
school, all local taxes of the sending
contracting district, except those going
to the interest and sinking fund shall be
credited to the receiving school by the

tax collector as collected, and the teacher
pupil quota shall be based on the combined
census total * * *;

"A large number of school districts throughout the State
carried out agreements to contract. In certain instances
it was found that a few school districts did not follow
the law and requested cancellation of said contract. This
is particularily true in cases of school districts con-
tracting to receiving schools which did not maintain an
accredited colored school of higher rank. In other in-
stances schools contracted to Receiving Districts which
did not maintain an accredited school.

"It is assumed that the receiving school combined
the scholastic census rolls both white and colored and
the per capita apportionment of the sending contracting
district was paid to the receiving school and all local
taxes of the sending contracting district, except those
going to the interest and sinking fund, was credited to
the receiving school and the teacher pupil quota was
based on the combined census total.

"Article 2, Section 1, of House Bill No. 176, reads,
in part, as follows:

"'The trustees of the districts authorized
to apply for aid under the provisions of this
Act shall send to the State Superintendent of
Public Instruction on forms provided by said
authority, all information that may be re-
quired. Said forms will include a budget by
which the amount of Salary Aid to which a
school will be eligible shall be determined.
The receipts as shown in said budget will in-
clude the State and County Available and local
maintenance balances brought forward from the
preceding year, State and County Available and
Local Maintenance receipts for the current
year, tuition to be collected locally, and
miscellaneous receipts. The expenditure will
include salaries of teachers as determined by
the salary schedule stated herein, and a maxi-
mum of One Hundred Eighty Dollars ($180.) per
teacher per year in accredited schools and
One Hundred Sixty Dollars ($160.) per teacher
per year in unaccredited schools for other
current expenses; * * *;

Mr. A. B. King, page 3

"A joint departmental policy was followed wherein districts contracting to a Salary Aid school it would not be necessary for the sending contracting district to submit an application. This procedure, by cancellation of the contract, made necessary the filing of an application by the District which had at an earlier date executed an agreement to contract.

"Quoting further from House Bill No. 176, Article 2, Section 2, which reads as follows:

"'Filing Date. All applications for any type of aid authorized herein, except tuition aid, shall be on the file with the State Department of Education in Austin not later than October 1st of each scholastic year for which aid is asked. Schools whose applications for state aid are filed later than October 1st of each year for which aid is asked, shall be ineligible for any type of aid.'

"From the above information we wish to submit the following question:

"Can the office of the Legislative Accountant accept a late filing date of an application when such contract was cancelled after October 1, of the scholastic year? * * *"

In opinion No. O-5423, we held that the requirement that all applications for any type of aid, except tuition aid, shall be filed not later than October 1st of each scholastic year is mandatory.

In that opinion is found the following language:

"And from the opinion of the court in the case of Gomez v. Timon, 128 S. W. 656, we quote the following:

Mr. W. B. King, page 4

"'"A clause is directory when the provision contains mere matter of direction and no more; but not so when followed by words of positive prohibition." Bladen v. Philadelphia, 60 Pa. 466; Pearce v. Morris, 2 Ad & El. 96. Prohibitory words can rarely if ever be directory. There is but one way to obey the command "thou shalt not," which is to abstain altogether from doing the act forbidden.'

"Thus, the general rule is well-established that statutory provisions affirmatively worded and setting forth the time in which an act is to be done are usually directory; but where the provisions is negatively worded or contains negative words restraining the doing of the act after such time, the provision is mandatory. See the recent case of Markowsky et al. v. Newman et al., (Sup. Ct.), 136 S. W. (2d) 808, affirming this rule.

"Now, let us apply these principles to Section 2, Article 2 of the rural aid bill. Section 2 does not simply read: 'Application shall be on file by October 1st.' It goes much further and is much stronger, for it reads:

"'All applications for any type of aid authorized herein, except tuition aid, shall be on file with the State Department of Education in Austin not later than October 1st of each scholastic year for which aid is asked. Schools whose applications for state aid are filed later than October 1st of each year for which aid is asked, SHALL BE INELIGIBLE for any type of aid.' (Emphasis ours)

"This provision is clearly in negative language. Provision is made that the applications shall be filed not later than October 1st. Even so, the Legislature was not satisfied with this alone, for it added the provision that schools whose applications are filed later than October 1st shall be ineligible for any kind of aid.

"This provision is not only in negative words, but it also contains a positive prohibition or limitation. The provision is, therefore, mandatory. You are, therefore, advised that Section 2 makes the ineligibility positive and definite beyond any decision or action on the part of the Department of Education or any other body.

"The Legislature has in the plainest and most positive language made a definite determination that October 1st is the deadline for the effective filing of all applications for aid except tuition aid. Any conclusion other than the one which we have reached would be, in effect, holding that the Legislature is powerless to set a time within which applications must be filed. The absurdity of such a conclusion is apparent."

Your question, therefore, is answered in the negative.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By C. F. Gibson

C. F. Gibson
Assistant

CFG:EP


APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN