Grove *v.* Toninecz, Appellant.

Argued November 18, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, ERVIN, and WATKINS, JJ. (WOODSIDE, J., absent).

34

*Francis H. Patrono,* with him *McCloskey, Patrono & McCloskey,* for appellant.

*Paul N. Barna,* for appellee.

OPINION BY HIRT, J., March 18, 1959:

The defendant, on October 18, 1954 drove his automobile upon the plaintiff's used-car lot into violent collision with a Packard automobile owned by plaintiff on which he was making repairs. The impact forced the Packard into a Cadillac automobile also owned by plaintiff, which was behind it. Plaintiff was thrown from the Packard car onto the ground and was seriously injured. At the trial the negligence of the defendant was admitted; the single issue before the jury was the total amount of the damage suffered by the plaintiff. It was agreed that the amount of damage to plaintiff's Cadillac automobile was limited to $422.68 and that $335 was the damage to the Packard. The jury found for the plaintiff in the sum of $5,000. This verdict after deduction of the agreed amounts of the damage to plaintiff's two automobiles and $30 for x-rays, reflects an allowance for personal injuries in the sum of about $4,200. The lower court overruled defendant's motion for a new trial and entered judgment on the verdict.

In this appeal defendant contends that the verdict was excessive. In the approach to the question, both parties agree that the only contested issue before the jury was the amount of a proper allowance to plaintiff for pain and suffering; no loss of earning power was involved. Plaintiff was not hospitalized and proof of his medical expense, including treatment on 50 occasions at the office of his doctor over a period of from 6 to 8 months, failed for want of competent evidence. We are unable to agree that the verdict was excessive, under the circumstances. The defendant has listed the disabilities which were suffered by the plaintiff according to the testimony produced by him, in substance, thus: headaches and dizziness experienced every day up to the time of trial; pains in the left hip resulting from a blow at that point; an old hernia on the right side which became "irritated"; a resulting weakness in the left inguinal area; a previously existing low back pain which was lighted up; a resulting nervousness causing sleeplessness which also aggravated a speech defect of the plaintiff suffered by him since childhood. As to the speech defect this comment of the trial judge appears in the opinion of the court en banc: ". . . that, during 14 years experience of the Trial Judge on the bench and his 27 years' experience as a trial lawyer, he had more difficulty understanding this plaintiff than he has experienced with any previous party or witness in court." The plaintiff had testified at length to the effect that the nervous disorder resulting from the injury had seriously worsened his speech. On that phase of the case, in the court's opinion, in refusing a new trial this statement appears: "If the jury had believed that the speech impediment of the plaintiff had been increased to the extent claimed, this one element of damage would justify the amount of the verdict returned."

The defendant attempted seriously to impeach plaintiff's testimony as to the damage resulting from the injuries sustained by him on October 18, 1954.[1] But the jury on the question of credibility saw fit to accept the plaintiff's testimony as to the nature and seriousness of his injuries on that date. In the light of the verdict we therefore have no choice other than to say that the damages awarded are not excessive. Cf. *Smith v. Allegheny County*, 377 Pa. 365, 105 A. 2d 137.

Within the February Term, 1957, the defendant had challenged the array of jurors who were summoned for the trial of cases during the succeeding terms in the same year. After hearing, testimony taken, and argument before the court en banc, the challenge to the array was overruled on February 11, 1957. The defendant has stressed this order, alleging error, as an additional, if not the principal ground for the grant of a new trial.

The appellant contends that the system of selecting jurors in Washington County violates mandatory statutory requirements in Pennsylvania. The election of jury commissioners is governed by the Act of April 10, 1867, P. L. 62, 17 PS §941. The Act by necessary implication, contemplates the election of one commissioner from each of the two dominant political parties. The method for the selection of jurors is prescribed by §2 of the 1867 Act, supra, 17 PS §942, in this language: "It shall be the duty of said jury commissioners, president judge, or additional law judge of the respective district, or a majority of them, to meet at the seat of justice of the respective counties, at least thirty days

---

[1] Plaintiff had been injured in a prior accident, but under the clear instructions of the trial judge we must assume that the jury in this case restricted their deliberations to the damages resulting from injuries sustained as a result of the defendant's negligence on October 18, 1954.

before the first term of the court of common pleas, in every year, and thereupon proceed, with due diligence to select, alternately, from the whole qualified electors of the respective county, at large, a number, such as at the term of the court of common pleas next preceding shall by the said court be designated, of sober, intelligent and judicious persons, to serve as jurors in the several courts of such county during that year; and the said jury commissioners, president judge, or additional law judge, or a majority of them, shall, in the mode and manner now directed by law, place the names of persons so selected in the proper jury wheel, and the said jury wheel, locked as now required by law, shall remain in the custody of the said jury commissioners, and the keys thereof in the custody of the sheriff of said county." In essence the principal complaint of the appellant is that the method in vogue in Washington County violates the law in that prospective jurors are not selected "from the whole qualified electors" of the county.

At the request of defendant's counsel, a competent public accountant made an analysis of the list of prospective jurors for the year 1957. This list as filed with the prothonotary was certified by the judge and the two jury commissioners who had put the names in the jury wheel. The total number of names on the list, comprising the panel, was 1222. The accountant had also made an analysis of the venire lists for each of the years within the period of 1952 to 1956, inclusive. He testified that 4 persons on the 1957 list had served four times within the above 5-year period; that 8 persons had served three times and that 15 persons had served twice during that period. The appellant refers to these repeaters as "professional jurors." The name would seem to be a misnomer when applied to one who performs any special service for even four days in five

years for a remuneration of but $7 per day. But re-
peaters were so referred to in *Commonwealth v. Zilla-
frow,* 207 Pa. 274, 56 A. 539, a murder case, in which
the exclusion from the panel of names of those who
had previously served as jurors within three years was
approved "to prevent . . . having the court thus incur
the suspicion if not the risk of being served by 'pro-
fessional jurors' ". In the present instance it must be
conceded that a procedure which fosters the placing of
the names of repeaters in the wheel by mistake or other-
wise is subject to criticism; a criticism which could
have been avoided in this instance, as it is met else-
where, by a provision for clerical service sufficient to
screen out the names of jurors who were repeating too
frequently. But there is no legislative limitation as
to Fourth Class Counties (of which Washington Coun-
ty is one) on the frequency with which a qualified
elector may serve as a juror. In some counties of the
fourth class however, in the absence of statutory regu-
lation, the frequency with which one may be selected
as a juror is restricted to once in every three or four
years by court rule. This practical method is to be
commended. But the testimony in this case as to the
number of repeaters in this case is no ground for chal-
lenge of the array, even though the testimony be ac-
cepted at face value, in the absence of findings from
the evidence by the court. The repeaters were still
qualified electors and no law was violated when their
names were put in the wheel.

In attacking the method of the Jury Commission-
ers by which they secured names of jurors for the
wheel, appellant contends that they both delegated
their responsibility to politicians in the county. One-
third of the names of those to be summoned for jury
duty every year were put in the jury wheel by each
of two jury commissioners (one elected for a term of

three years on the Democratic ticket and the other a Republican similarly elected) ; the remaining one-third of the names were selected and put in the wheel by the court. In the process of selecting jurors for the panel each of the jury commissioners addressed a letter[2] to committeemen of his political party throughout the county requesting names of qualified electors in his district. In each case the number requested and received was in a proper ratio to the number of registered voters in the district. The commissioners received names from other sources but we may assume that the majority of those put in the wheel were suggested by party committeemen. In *Commonwealth v. Zillafrow,* supra, the specifications of error related as here to the alleged disregard of the statutory direction that jurors shall be selected from "the whole qualified electors of the county at large", under the identical 1867 Act with which we are here concerned. It was there alleged that quotas of electors to be selected for jury duty were in the first instance allotted to the several election districts in proportion to the number of qualified electors in each. In commenting on the allegation, the Supreme Court said: "But even assuming that the facts are as averred it does not appear that the method pursued contravenes the intent of the statute. It secures an equal proportionate representation of all parts of the county in the jury wheel and lessens

---

[2] The letters of the commissioners addressed to committeemen of both political parties were identical in content and stated: "As we fill the Jury Wheel early in December, will you please send me by December 1st., 6 names—four men and two women— in your district who would make good jurors and who are in a position to serve. They should be carefully selected so that only persons who are fitted for jury service shall have their names in the wheel . . . It is important that you write your name, precinct, city or township on the line provided at the bottom of this letter before returning it to me . . ."

the probability that any particular panel may, by the bunching of the name slips, or insufficient mixing in the wheel, be selected altogether from a particular vicinity." And further, in referring to the statutory requirement above noted and the exclusion of the names of those who have previously served within three years, the Supreme Court said: ". . . they do not involve any infraction of the prisoner's rights. The statutory provisions alleged to have been disregarded, though not followed literally, were not contravened as to spirit or intent. The provisions themselves are directory in character. They do not prescribe or bear upon the substance of any duty, but merely upon the manner of its performance, and do not differ in this respect from other provisions of the same or analogous acts which have already been held to be directory only: Com. v. Valsalka, 181 Pa. 17; Rolland v. Com., 82 Pa. 306; Clark v. Com., 29 Pa. 129; Bladen v. Philadelphia, 60 Pa. 464." The judgment of sentence for murder in the first degree in the *Zillafrow* case was affirmed and the record remitted for the purpose of execution. In *Klemmer v. Railroad,* 163 Pa. 521, 30 A. 274, in referring to the duty of the jury commissioners and the court to select the names of qualified persons "from the whole qualified electors of the county" of Berks, Mr. Justice DEAN said: "As 1200 names were ordered to be put in the wheel, about one man was wanted out of every twenty-five, for jury service. Any one will readily understand, the duty of the board, in such a populous county, was no light one. To eliminate the aged, decrepit, ignorant, intemperate, and those who did not understand the English language, and then select from the large number of competent persons remaining, 1200, could only be done by careful inquiry, thought and preparation beforehand. There is not probably, in the county, a single person qualified from his

own knowledge to do this. His ability to select, must, in large degree, come from information derived from others." And in *Commonwealth v. Mullin*, 65 Pa. Superior Ct. 365, where the charge was that "the . . . panel was drawn from lists furnished by the members of the Republican and Democratic county committees and others to the respective jury commissioners and from a list of jurors furnished to the court by their friends or acquaintances," the order overruling a motion to quash the array was affirmed in the absence of evidence of bias or prejudice. It was held that the method of selecting the panel did not violate "any act of assembly or decision of the court."

A jury commissioner in fourth class counties receives but $750 per year. The problem of selection of about 400 names of persons for jury duty, year after year, is onerous, and of necessity he must rely on the judgment of others to a more or less extent in their selection. An elector is qualified for jury service without being registered as a voter and no one knows as well as a party committeeman who the qualified electors are who live in his district. We are not approving the method here used as worthy of universal adoption. Conceivably, political considerations in some instances might result in the selection of jurors who should never be permitted to serve. But there is nothing in this record to indicate that any of the persons suggested by the commissioners was not qualified or that the defendant in drawing a jury on the trial of this case was in any way prejudiced. That one of necessity must look to others to some extent for names of qualified electors was recognized also by the lower court, in using the roster of service clubs or other respected organizations for the names of "sober, intelligent and judicious persons" to be put in the wheel.

The provision of the 1867 Act which requires that jurors shall be selected from the "whole qualified electors" of the county, under the ruling of the *Zillafrow* case, supra, is directory only. And the lower court therefore properly refused to quash the array under the rule, generally applicable, in the absence of a showing of some prejudice to the defendant from lack of strict compliance with the statute. 31 Am. Jur., Jury, §104; L.R.A. 1916A. 819; cf. *Commonwealth v. O'Brien*, 19 Dist. 361, opinion by ROBERT S. FRAZER, P. J., later Chief Justice of the Supreme Court of Pennsylvania. There were 101 jurors on the venire for the trial of civil cases at the August Term, 1956, in the court below. Four of them had been called four times and eight of them three times within a prior six-year period. (That 15 of them had been called twice in 6 years is of no moment). There is no evidence that any one of these repeaters was called at the trial of the present case or that any one of the jurors called was disqualified because he was not an elector or because of bias or prejudice. At the argument before us defendant's counsel admitted that he did not exhaust his peremptory challenges in drawing a jury to try the present case. And the trial judge indicated in this record that if requested by either party he would have allowed an examination on voir dire of every juror called.

The defendant was not prejudiced in any respect by the order overruling his motion to quash the array of jurors.

The judgment, accordingly, is affirmed.