Commonwealth v. Peter Valsalka, alias Wassel, Appellant.

*Criminal law—Murder—Jury commissioners—Constitution, article VII., sec. 1.*

A judgment on a verdict of guilty of murder in the first degree will not be arrested on the ground that the grand jury had been selected by jury commissioners who had not taken and filed in the office of the prothonotary the oath of office prescribed by art. VII., sec. 1, of the constitution, where it appears that the commissioners had taken, reduced to writing, and signed the oath of office before the deputy recorder, in his office, and had there left it before the beginning of their official terms.

*Criminal law—Murder—Jury—Custody of jury wheel.*

A judgment on a verdict of guilty of murder in the first degree will not be arrested on the ground that the jury wheel had not been in the custody of the jury commissioners, where it appears that the jury wheel had been kept in a place designated and set apart for it in the county commissioner's safe, and that the only person besides the jury commissioners who had access to it was the clerk of the county commissioners, who was at the same time the clerk of the jury commissioners.

On a motion in arrest of judgment in a capital case, the grounds alleged were (1) that the key of the jury wheel had not at all times been inaccessible to any other person than the sheriff; (2) that the jury wheel had not been sealed as prescribed by the act of assembly. There was no averment as to the period of time when these irregularities existed, although an opportunity was given by the court to aver it specifically. *Held,* that (1) a mere offer to produce evidence having relation to the subjects mentioned in the motion, but without regard to any designated period of time or cir-

cumstance, was, under the circumstances, properly overruled; (2) the offer must be specific enough to indicate its pertinency; (3) the defense must relate to the issue, and in its presentation must conform to reasonable and well established rules.

_Criminal law—Murder—Jury—Act of April 14, 1834, sec. 135._

The Act of April 14, 1834, sec. 135, P. L. 365, requiring the names of defaulting or excused jurors to be replaced in the wheel, was only intended to secure equality in the performance of jury duty, and an omission to replace these names in the wheel is a matter of which a defendant on trial cannot complain.

_Criminal law—Murder—Jurors—Mistake in name of juror—Filling jury wheel—Filing list of jurors in prothonotary's office._

Where the name, occupation and residence of a person summoned as a juror fail to correspond exactly with any name, occupation and residence appearing on the list, but very nearly correspond, any prima facie presumption that the juror summoned is not one of those selected by the proper officers is rebutted by proof that there was no person to be selected of the exact name of that appearing on the list.

On the trial of an indictment for murder one of the jurors drawn and returned was Jasper M. Burdick, manufacturer, of Wilkes-Barre, who on his voir dire swore that he was a resident of Wilkes-Barre and a manufacturer. On the jury list filed in the prothonotary's office was the entry "Casper M. Burdick, manufacturer, Wilkes-Barre city." The evidence showed that the only other man of the name Burdick in the city of Wilkes-Barre was W. H. Burdick, who was not a manufacturer. _Held_, that a challenge of the juror was properly overruled.

An error in writing the name General instead of Gemmel in the sheriff's return of jurors served is not ground for successful challenge where it appears that the panel of jurors certified by the sheriff and jury commissioners, and also the notice served upon the juror, contained the name Gemmel.

A juror was summoned and returned as a mine boss. Within two months of the filling of the wheel, he had been superintendent of a plane. Another person of the same name living in the same locality had for two or three years before the filling of the wheel been a merchant and insurance agent only, but prior to that time had been an outside foreman or boss. _Held_, that the juror present was the person whose name was intended to be placed in the wheel.

_Criminal law — Murder — Jury — Challenge — Conscientious scruples against capital punishment._

On the trial of an indictment for murder the commonwealth has the right to challenge for cause a juror who states that he has conscientious scruples against capital punishment.

_Criminal law—Murder—Swearing of witnesses—Interpreter._

On the trial of an indictment for murder several witnesses were sworn in English without the intervention of an interpreter. They held up their

hands without any manifestation of ignorance on their part as to what they were doing. They were of the same nationality as the defendant himself, and their native tongue was likewise his own. No objection was made at the time as to the method of swearing them, and the examination and cross-examination of them continued for several days, either directly in English, as was the case with some, in whole or in part, or indirectly in their native language as was the case with others. *Held*, that there was no error in refusing a motion made by defendant's counsel, after the commonwealth's case was closed, to strike out the testimony of these witnesses.

Argued March 22, 1897.   Appeal, No. 100,       T., 1897, by defendant, from judgment of O. & T. Luzerne Co., April T., 1896, No. 133, on verdict of guilty of murder in the first decree. Before GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Indictment for murder.   Before BENNETT, J.
Verdict of murder in the first degree.

On a motion in arrest of judgment and for a new trial BENNETT, J., filed the following opinion :

We will consider in their order the several reasons filed in support of this motion,—the first four being directed to the alleged illegality of the indictment.

1. It is claimed that there was no legal indictment because the persons who found it were selected by jury commissioners who had not taken and filed in the office of the prothonotary the oath of office prescribed by art. 7, sec. 1, of the constitution, and therefore such commissioners were not legally qualified to act.

The record shows that this reason comes up under the following circumstances : Before pleading, defendant's counsel moved to quash the arrays of grand and petit jurors, as also the indictment, because, as alleged, the jury commissioners, S. W. Taylor and J. F. Dohl, had never taken the oath in question, nor filed the same.   At the request of the counsel for this motion, who had not sufficient evidence at hand to support the facts involved in it, the court was adjourned to enable the defendant to produce the jury commissioners to establish such fact.   At the meeting of the court, these persons were produced and sworn, and from their evidence, it appeared that they had taken,

reduced to writing and signed the oath of office before the deputy recorder, in the office of that officer, and had there left it, —this being before the beginning of their official terms. That they supposed, from information received upon inquiry, that this was all that the law required of them in that behalf. We thereupon found, as matter of fact, that these officers took the oath prescribed by the constitution, and we overruled the motion,—adding, in our ruling, that even though the oath was not filed in the prothonotary's office, that would not be a sufficient reason for allowing the motion, in that the portion of the constitution relating to the filing of the oath, is directory rather than mandatory. The first clause of sec. 1, art. 7, constitution, requires . . . . county officers, before entering upon the duties of their respective offices, to take and subscribe the form of oath there given; the next clause requires such oath to be administered by some person authorized to administer oaths . . . . and in case of county officers, that it shall be filed in the office of the prothonotary of the proper county; and the next provides "and any person refusing to take said oath or affirmation shall forfeit his office." Our meaning at the time of overruling this motion would have been more clearly expressed had we said that the clause prescribing a forfeiture of office has reference merely to the refusal to take the oath, and the failure to file it is not a cause of forfeiture, nor is the filing a prerequisite to the right and qualification of the officer to enter upon the duties; but such filing is directed merely for the purpose of preserving the oath as evidence that it has been taken, and the act of filing may be performed at any time.

In support of the first reason filed and now under consideration, it has been argued at length that in construing express constitutional provisions courts have no authority to hold that any of them is merely directory or anything less than mandatory, and, therefore, as the oath was not filed when the jury commissioners filled the jury wheel, or afterwards when they drew the panels of jurors, the motion to quash the arrays and the indictment ought to have prevailed. Whatever may be said of this first proposition, it does not meet the facts of the case and the real question before and in the mind of the court when the ruling was made. As already indicated, the constitution does not expressly say that the oath shall be filed before the

officer enters upon his official duties, nor that he shall forfeit his office if he fails to file said oath, and if such was the meaning it arises from implication only. At the time of the ruling these features were in mind, as also what was said by GIBSON, C. J., in Com. v. Clark, 7 W. & S. 133, as to the commands of the constitution, namely; that "its commands, as to the time or manner of performing an act, are to be construed as merely directory wherever it is not said that the act shall be performed at the time and in the manner prescribed and no other."

Without further commenting upon the reasons given or intended to be applied by the court in overruling the motion in question, we are satisfied that the ruling was correct upon other grounds, namely: The constitutional provisions in question do not relate to the mode of the exercise of the official functions of the officers there named, after they shall have entered upon the duties of their offices; but only to what they shall do, after their election or appointment and before beginning the performance of official duty, in order to entitle them to the right and power to act. To be more specific, these provisions do not pertain to the mode of procedure of the jury commissioners of this county, Messrs. Taylor and Dohl, either in their filling the jury wheel with the names from which the grand and petit jurors here involved were drawn, or in the drawing of those juries. Nor is there any allegation that said commissioners were not duly and regularly sworn, first, before the filling of the wheel, and next, before drawing the panels in accordance with the act of assembly in such case provided. The constitutional provisions, however, relate to the duties of Messrs. Taylor and Dohl before assuming to act as jury commissioners for any purpose, in order to entitle them to the right and power to thus act. And even though their oaths of office were not actually filed in the office of the prothonotary, the most that can be said of their delinquencies is that they neglected a prescribed constitutional duty before asserting their powers as commissioners; not, however, that they neglected a duty, the nonperformance of which constituted a cause of forfeiture of office, for that cause is the refusal to take the oath. These persons have acted as jury commissioners, and this is admitted both in the motions made at the trial and in the reasons now before us. They are therefore, at least, officers de facto in any and every event, and their legal

right and power to act as such cannot be gainsaid by the defendant in this case, as this question could only be raised by parties other than the defendant, and in another proceeding instituted directly against these officers. See Keyser v. McKissan, 2 Rawle, 139; Clark v. Com., 29 Pa. 129; Campbell v. Com., 96 Pa. 344; Shartzer v. School Dist., 90 Pa. 192; Gregg Twp. v. Jamison, 55 Pa. 468; Com. v. Slifer, 25 Pa. 23-31.

2 and 3. The second reason is that the petit jury that appeared to try this cause were illegally impaneled because they were drawn from a jury wheel not in the custody of the jury commissioners; and the third is that the key of the jury wheel was not at all times inaccessible to any other person than the sheriff.

These reasons, like the one already considered, embody complaints without specifying how or wherein the court erred with respect to the matters therein embraced. These complaints are of a serious nature, and in order that our disposition of them may be intelligible, it is necessary to refer to the record facts. After the testimony had been heard upon the motion already considered, counsel for the defendant filed four additional reasons, unsupported, however, by any affidavit or evidence,—for quashing the arrays and the indictment. The facts asserted in each of these four several reasons, are, upon the face of the latter, either directed to such a period of time as shows their irrelevancy to the matter then before the court, to wit: that of quashing the arrays and the indictment, or to an entirely indefinite period, and therefore having no direct bearing upon the case at hand. We will here reproduce these reasons, numbering them for convenience sake, *a, b, c, d,* as follows : (*a*) because the jury wheel is not in the custody of the jury commissioners; (*b*) because the key of the jury wheel has not at all times been inaccessible to any other person than the sheriff; (*c*) because the prothonotary of the court of common pleas and the clerk of the court of quarter sessions and oyer and terminer did not, nor did either of them, certify to the sheriff and jury commissioners of the said county, at the end of the preceding term of their respective courts, the names of the jurors who appeared and served at the said terms; also the names of those who made default or were excused from serving as jurors at that time, and also the names of those who were privileged or

exempted from serving as jurors; (*d*) because the jury wheel has not been sealed as prescribed by the act of assembly.

After filing these several reasons, counsel for defendant made an offer to show the facts asserted therein, this offer being in the exact language of the reasons and, therefore, equally as indefinite as they in their bearing upon the question of the validity of the arrays and indictment sought to be quashed. These reasons and the offers were severally overruled, and in overruling them the court, in order that the counsel should not be misled as to the causes for such action, but might remold his reasons so as to render them pertinent to the particular indictment and juries involved, said (as to reason and offer *a*), that it was too general in not specifying that the wheel was not in the custody of the jury commissioners, prior to the time when the grand jury which found this indictment was selected, and prior to the time when the petit jury was drawn; (as to reason and offer *b*), that they were also too general in not fixing the period of time during which the key was not inaccessible to persons other than the sheriff; (as to reason and offer *c*), that these were insufficient for quashing the arrays or the indictment, unless it were also shown that the names of those who made default or were excused were not replaced in the jury wheel, and also that the time fixed in the offer was too general to affect the question before us (the fact being that the end of the preceding terms of the respective courts specified in the offer was March 9 and March 26, 1896, respectively, a time long after the juries involved had been drawn); (and as to the reason and offer *d*), that it was also too general. The subject-matters of the reasons (*c*) and (*d*) are not now assigned among the reasons in support of the motions presented before us, but they have been argued as if thus assigned and we will so consider them. Our ruling as to the lack of pertinency of reason (*c*) by reason of the time referred to therein requires no further comment. The other branch of the ruling on the same reason was predicated of the theory that sec. 128 of the Act of April 14, 1834, P. L. 364, requiring the certificates referred to in that reason, and sec. 135 of the same act, requiring the sheriff and commissioners to replace in the wheel at the time of the next drawing, the names of jurors thus defaulting or excused, were intended for the benefit of the suitor and for the purpose of giving him as large a

number of names as possible from which juries to try his cause should be selected; and therefore if these names were in fact replaced in the wheel (which would be presumed unless it were directly shown to the contrary), the defendant had not been injured by the alleged neglect of the clerk and prothonotary to certify the names, as this did not prove failure of the jury commissioners and sheriff to replace the names in the wheel. Upon further investigation, however, we find it directly decided in Rolland v. Com., 82 Pa. 321, that even the omission to replace these names in the wheel is a matter of which the defendant on trial cannot complain, and that the legislation in question was only intended to secure equality in the performance of jury duty. This necessarily disposes of the defendant's contention as to this subject-matter.

· Upon the overruling of reason (*d*), supra, counsel for defendant, without filing any more specific data in that regard, thereupon offered to prove that the jury wheel had not been sealed with the seal of the jury commissioners as prescribed by the act of assembly by the presentation in evidence of the wheel itself, which was then produced in court for that purpose, and showed the manner in which it was then sealed,—it thus being long after the juries involved in the case had been drawn, and after the wheel subsequent to such drawing had been sealed. The ruling upon this offer was as follows : " The question is not how the jury wheel as exhibited here in court today is sealed or has been sealed. The question, if of any importance at all, is as to how it was sealed or kept sealed prior to the time when these juries were drawn. Any evidence going to show that it was not sealed prior to that time is allowable. Evidence of its condition since the juries have been drawn is entirely immaterial." We discover no error in this ruling. Moreover, it clearly indicated the time to which evidence relating to the subject should be directed, and could not therefore have been misleading to the counsel. No evidence with relation to such period was offered or asserted to be in existence, and we must conclusively presume there was none affecting the proper sealing of the wheel in the manner prescribed by the act of assembly.

· Upon the overruling of reason (*a*), supra, defendant's counsel, without filing further reasons in that behalf, offered to prove that the jury wheel was not in the custody of the jury commis-

sioners for one week prior to the drawing of the grand and petit juries for the term at which the indictment was found. This offer was allowed and thereupon Mr. James M. Norris was sworn and testified substantially as follows : That he was the clerk for both the jury commissioners and the county commissioners and was paid by each board for services rendered for them respectively; that the jury commissioners had had no separate office in the courthouse or elsewhere; that the jury wheel had been kept in the upper right hand corner of the safe in the commissioners' office, the place especially set aside for it, and that the jury commissioners themselves took it out each time before the drawing of a jury and put it back again; that this corner of the safe was devoted to no other purpose than that of keeping the wheel and the envelopes containing the names of jurors drawn, after a drawing took place; that the wheel was in the custody of the witness as the clerk of the jury commissioners in the corner of the safe in question; that the safe was not accessible to others; and that there was two sets of doors to it, which were kept closed, except while putting in or taking out papers, but not locked during the daytime.

After considering this evidence, we found that the wheel was in the custody of the jury commissioners during the period in question within the meaning of the act of assembly in that regard, and thereupon the motion was overruled.

Complaint in this respect is continued under the second reason now before us on the present motions, and under the third of these reasons there is again presented the complaint made on the trial, by motion (*b*), supra, to quash the indictment, because the key to the jury wheel was not at all times inaccessible to persons other than the sheriff. The second section of the Act of April 10, 1867, P. L. 62, enacts that "the said jury wheel, locked as now required by law, shall remain in the custody of the jury commissioners, and the keys thereof in the custody of the sheriff of the said county." It has been held that in the absence of evidence to the contrary the presumption is that the sheriff and jury commissioners have legally performed their duties: Rolland v. Com., 82 Pa. 306. It has been seen (and as to this reference will be further hereinafter made), that there is no evidence that the key of the jury wheel was not in the custody of the sheriff as required by law, and as to the cus-

tody of the wheel by the jury commissioners we have the evidence already set forth. We think this evidence justified the finding that the law had been complied with.

The legislature have definitely prescribed the locking and sealing of the wheel, as also the manner of such sealing; but as to the additional precautions to prevent tampering with the names placed therein from which juries are to be drawn, the enactment is less specific. It does not attempt to define the precise meaning intended by the use of the word "custody," either as respects the wheel or the key, and of this portion of the enactment it was said in the case last cited, "we must give this section a reasonable interpretation. It does not designate where the wheel shall be kept, and provides no place in which the jury commissioners may deposit it." It was therefore held in that case that the depositing of the wheel in the vault in the county commissioners' office, in a locked chest, in the custody of the county commissioners' clerk, who was also the sworn clerk of the jury commissioners, was a sufficient compliance with the statute relating to the custody of the wheel. In the later case of Curley v. Com., 84 Pa. 152, there being no office provided for the jury commissioners nor place of safety for the custody of the wheel, they arranged for its custody in the vault of the county treasurer, upon condition that no one but a jury commissioner should enter the vault for the wheel. The sheriff kept the key, and it was held that the custody of the wheel was sufficient. In this last case the key to the vault was in the possession of the county treasurer, and of course he had access thereto. His only restraint by the jury commissioners against taking the wheel from the vault or allowing persons other than these commissioners to enter it for that purpose was his agreement with the jury commissioners not to do so and the legal penalties attaching to his interference with the wheel. So in the present case, the jury commissioners were without an office or place of their own under the control of no one else, in which to keep the wheel, and it was kept in the place designated and set apart for it in the county commissioners' safe; so far as shown, no one but the jury commissioners ever took it out of that place or put it back there, or were authorized by them to interfere with it in any way; and while the clerk of the county commissioners had access to the safe, he was, at the same

time, the clerk of the jury commissioners, and his access to the safe and use of it for the purposes of the business of the county commissioners, no more interfered with the legal custody of the wheel in the jury commissioners than did the entrance of the treasurer into his own vault on business pertaining to his office, in the case of Com. v. Curley, supra.

That the word "custody" mentioned in the statute does not necessarily imply a constant keeping under lock and key, is shown in the above case of Rolland v. Com., where the keeping of the key by the sheriff in an unlocked drawer of his desk, to which his son and others going into the room had access, by reason of the desk not being locked all the time, was nevertheless held to be a compliance with the law, although a careless keeping of the key.

The line of argument adopted in support of the present motions, in view of our conclusions that there is no evidence affecting the proper sealing of the jury wheel, or showing that the key thereof was not in the custody of the sheriff as required by law, requires further notice at this point. It is conceded by counsel for defendant,—in fact the record proves it beyond any question, that there is not upon such record, any evidence of the character just referred to; but it is claimed: (1) That under the formal reasons (*b*) and (*d*) supra, and the offers to prove the facts there alleged (being among the several reasons filed for quashing the arrays and the indictment), the court should have admitted evidence to show that the wheel was not properly sealed and that the key was not properly kept; (2) that it must now be presumed that such evidence existed; and (3) that by overruling the reasons and offers, the defendant has been deprived of his legal rights. It is not now argued, nor is such a proposition tenable, that the questions of the proper custody of the key in the sheriff, and of the proper manner of sealing the wheel, were material in this case, as respects any other period than from the last annual filling of the wheel to the drawing of the grand and petit jurors involved in the finding of this indictment and the trial thereof; but it is contended that the reasons and offers in question, although not expressly directed to this period of time, should not have been overruled, because their unlimited scope as to time embraced among others the material period, and as said by the court in Com. v. Bczek,

168 Pa. 616, the rule in civil cases that it is not error to reject as a whole an offer which blends irrelevant and inadmissible matters with a matter relevant and admissible ought not to be summoned to sustain a ruling prejudicial to the interests of a defendant on trial for murder. There is no doubt of the correctness of the law or the principle of justice involved in this last proposition, but the mistake of the counsel in invoking it to prove that the court was in error in the ruling referred to lies in an erroneous assumption as to the true character of such ruling, and that it was prejudicial to any legal interest of the defendant. If the court had simply overruled the reasons and offers in question, without further suggestion or comment, and thereby the defendant's counsel had either been fairly misled to assume that the ruling involved the conclusion that evidence even pertinent to the material period of inquiry was not receivable, or he neglected his opportunity to renew the reasons and offers, so as to conform to the pertinent period, then such ruling, coupled with its treatment by counsel, would have operated to the prejudice of the defendant's interests, if he, in fact, had pertinent evidence to offer; and in that event the proposition of the case last above cited would now have been applicable, and it would have been wrong to refuse the defendant a hearing on the pertinent evidence in question, by the application of the rule in civil cases that it is proper to reject as a whole an offer blending relevant and irrelevant matters. But, as has already been shown, the court, in overruling the reasons and offers referred to, not only distinctly pointed out their lack of pertinency in not being properly directed to the period of time which rendered them material, but also indicated that evidence directed to such period would be receivable. And, as has also been shown, counsel thereupon, in the case of the reason relative to the custody of the wheel, adopted the suggestion of the court, renewed his offer and was heard upon the testimony. It cannot be said, therefore, either that the counsel was misled by the ruling in question, or that the court refused to receive testimony as to the questions of the proper custody of the key or the proper sealing of the wheel at any material point of time. Nor, in view of what we have already said, and in the absence of any specific offer of testimony relative to a material period of time, are we to assume that such evidence existed. The proposition

laid down in the case of Com. v. Bezek, supra, is therefore not applicable to the facts of this case, and as there shown it was not in fact applied in that case, because, as there appears, after the rejection of the offer of blended, relevant and irrelevant matter, that which was relevant was received and the defendant was therefore not harmed. So here the court indicated what matter was relevant and receivable and the defendant had a full and fair opportunity to present it. He has consequently no cause to complain, and the failure to present any relevant testimony gives rise to the presumption that there was none.

These conclusions in no way interfere with the legal rights of a defendant. Even though the offense charged against him be of the most serious character, his defense must have relation to the issue, and must, in its presentation, conform to reasonable and well established rules. When called upon to plead to an indictment he has an undoubted right to question the legality of any of the proceedings relating to the filling of the jury wheel from which either the grand jurors who found the indictment, or the petit jurors summoned to try him, were drawn, or to contest the legality,—as applied to the period between the filling and the drawing of jurors affecting his cause,—of the custody of the key of the wheel, or of the wheel itself, or of the manner of its sealing. But all these matters are presumed, in the first instance, to have been legally carried on and performed by the officers upon whom the law imposes that duty, and the defendant, who, being called for trial, complains to the contrary, must be prepared to support his complaint by pertinent evidence. A mere offer to produce evidence having relation to these several subjects, but without regard to any designated period of time or circumstance, not based upon any affidavit or specifying the name of a witness, does not require the court to assume its relevancy or to delay the regular trial and proceed with a general investigation of the subjects in question, upon such proofs as may happen to be extracted by the incidental calling of the officers supposed to be cognizant of the facts, of which the person proposing to call them has no definite information or knowledge. The court is entitled to know in advance specifically what is proposed to be proved in such case and the period of time to which the proposed evidence relates. If the complaining defendant has pertinent evidence to offer, his coun-

sel is presumed to know what it is, and it is his duty to make
the offer specific enough to indicate its pertinency.   Failing in
this, and being informed by the court wherein the offer is defect-
ive, neither he nor his client can afterwards justly complain of
injury to any legal rights, no matter how serious the character
of the offense for which the trial has been had, especially where
no affidavit or evidence of any kind is produced to show the
existence of evidence that may have been relevant.   Were the
rules of practice otherwise, trials in court would be without
definite purpose or efficacy.

4 and 5. The fourth reason is that the judge and jury com-
missioners did not, as the statute requires, file in the prothono-
tary's office a list containing the name, occupation and residence
of every person placed in the jury wheel, to wit: the name of
juror J. M. Burdick; and the fifth reason is the refusal of the
court to sustain defendant's challenge for cause of said juror,
as it appeared from the certified list of jurors offered in evi-
dence, that his name was not filed of record.   We assume that
by the language of the fourth reason, taken with that of the
fifth, it is meant, not that the certified list of jurors was not
regularly filed in the prothonotary's office, for the record here
shows that such a list was offered in evidence by the defendant,
but that it is intended to be asserted that such list did not con-
tain the name of one of the jurors called, to wit: J. M. or Jas-
per M. Burdick.   One of the jurors drawn and returned by the
sheriff on the regular panel was Jasper M. Burdick, who, on
being called and sworn on his voir dire, proved to be, as stated
on the panel, a resident of Wilkes-Barre and a manufacturer.
Thereupon defendant's counsel interposed a challenge for cause
" that the juror's name is not contained in the list of jurors'
names filed in the prothonotary's office, as prescribed by the act
of assembly," and supplemented the challenge by offering the
certified list in the file office, showing not the correct name of
the juror on the stand, but the name " Casper M. Burdick,
manufacturer, Wilkes-Barre city."   It was then shown to our
satisfaction by the testimony of the juror on the stand that the
only Burdick in the city of Wilkes-Barre were himself and
W. H. Burdick, of whom the former only was a manufacturer.
We thereupon overruled the challenge, holding in substance
and effect: first, that from the absence from the certified list of

the correct name of the juror upon the stand, in view of the presence on that list of a name with an occupation and residence in all respects identical with that of the juror, save in the first letter of the first name, we would not assume that the correct name of the juror present was not regularly selected and placed in the jury wheel; second, that we were satisfied from the facts already alluded to that the proper officers, in filling the wheel, intended to select the juror on the stand as one of the number selected, and for that purpose placed in the wheel a name with an occupation and residence, designing thereby to identify and select the particular juror present, who, by the name placed in the wheel, had been duly drawn and returned. In view of the nonexistence in Wilkes-Barre, or elsewhere, so far as the testimony showed, of any person of the name of Casper M. Burdick, whether a manufacturer or otherwise, and of the residence here of the present juror, Jasper M. Burdick, a manufacturer, we regarded the name on the list as corroborative of the actual selection and drawing of the juror present, yet indicative of an error in writing upon the list the name Casper instead of Jasper, consequent upon a similarity of sound in the calling of the name to the person who wrote the list.

The third section of the Act of March 18, 1874, P. L. 46, referred to in the reason under consideration, requires that thereafter "a list, containing the name, occupation and residence of every person placed in the jury wheel, shall be kept, certified by the judge and jury commissioners or such of them as shall be present at the selection of such persons, and filed of record in the office of the prothonotary of the court of common pleas of the respective county." In a case entitled, In the Matter of Challenge to certain Grand Jurors, reported in the Pittsburgh Legal Journal, Vol. 23, p. 73, we find a construction of this act by the present chief justice, then president judge of Allegheny county. In that case he says: "The act does not declare that the non appearance of a juror's name on the certified list shall be good cause for challenge, but, inasmuch as it requires that the list shall contain the name, occupation and residence of every person placed in the jury wheel, a fair construction of it requires us to hold that the list is at least prima facie evidence that all the persons whose names appear on it were duly selected, and that all whose names are not found on the list were not

properly selected, placed in the wheel and drawn therefrom. If the name of any person summoned as a juror does not appear on the certified list, 'the presumption is that he is not one of those selected; but this presumption may be rebutted by proof that he was duly selected and his name placed in the wheel as required by law. If this is satisfactorily shown, the fair inference then is that there has been merely an accidental omission to enter the name on the certified list, which may readily occur in making out a list of over three thousand names."

The foregoing construction must be viewed in the light of the fact that in the cases then before the court, neither did the names of the jurors there in question who had been drawn from the wheel nor, so far as shown, did any names in any way similar thereto appear on the list. 'We are of the opinion therefore that our conclusions in this case are not inharmonious with the spirit of the rule there applied. In other words, we hold where the name, occupation and residence of a person summoned as a juror fail to correspond exactly with any name, occupation and residence appearing on the list, but so nearly correspond as in the present case, any prima facie presumption that the juror summoned is not one of those selected by the proper officers is rebutted by proof that there was no person to be selected of the exact name of that appearing on the list. A list of jurors regularly certified and filed by the proper officers, as in this case, is not only prima facie evidence that all the persons whose names appear on it were duly selected, as held by Judge STERRETT, but also prima facie evidence of the selection of as many jurors as there are names on the list corresponding with the total number which the court has ordered to be selected; and where the variance between the correct name, occupation and residence of a juror summoned and appearing and a name, occupation and residence shown on the list is of the character of that in this case, and the facts are as here shown, the presumption that there was an error in writing the first name of the juror upon the list, consequent upon the liability of the clerk keeping it, as the names selected by the judge and jury commissioners are called off and placed in the wheel, to mistake the name Jasper when called, for that of Casper, is greater than that a name pertaining to no one in existence in the specified territory and with the specified occupation, was selected and placed in the wheel.

Though not among the reasons filed, it has been claimed in the argument that there was error in overruling defendant's challenges for cause in the cases of two other jurors to which we will make brief reference. When Frank Gemmel, a merchant, of Ashley, was called and sworn on voir dire, the defendant's challenge was " on the ground that the panel of jurors certified by the sheriff and jury commissioners contains the name of Frank Gemmel,—the name to which the juror responded when called here in court. The list of names of jurymen attached to the sheriff's return of jurors served, contains the name of Frank General, while the notice which the juror says was served upon him, contains the name of Frank Gemmel." The juror swore that he knew no Frank General, merchant in Ashley. No claim or pretense was made that the name of Frank General was upon the panel of jurors; while the very language of the challenge itself shows that this juror was regularly drawn, served with notice and appeared in response thereto. How, under such circumstances, an error in the writing of the name Gemmel, in the sheriff's return of service of jury notices, by writing it General, could possibly affect any legal right of the defendant or in any way disqualify the juror, has not been suggested, and we deem further comment unnecessary. John Jacobs, a juror drawn, summoned and returned as a mine boss in the city of Hazleton, stated when called and sworn on his voir dire, that he was and had been a resident of that city for eighteen years and still resided there; that up to the September previous to the time of the trial in April, he had been an outside foreman or boss of the mines, but since September had been a superintendent of a plane; that there was another John Jacobs who for two years past had been a merchant and insurance agent residing in said city, but that prior to that time the latter had lived in Hazle township and up to two or three years previous had also occupied a position of outside foreman or boss. A challenge for cause was then overruled,—the court holding that the juror present was the one drawn and intended for jury service. In our judgment, then and now, the occupation of the juror present, up to within two months of the time of filling the wheel, being the same as that of the person whose name was selected, and the juror thereafter continuing in connection with the same line of business, sufficiently indicated that he

was the one whose name was intended to be placed in the wheel, and clearly distinguished him from the other John Jacobs, who for two or three years had been a merchant and insurance agent only.

Finally, upon the subject of challenges, it is suggested that the court ought not to have sustained the commonwealth's challenge for cause of a juror, Peter Mackin, on the "ground of conscientious scruples against capital punishment." This juror clearly stated on his voir dire that he had such conscientious scruples on the subject of capital punishment as would prevent him from rendering a verdict of guilty of murder of the first degree, the penalty being death, if the evidence clearly warranted it. There was no error in sustaining this challange.

6 and 7. Another reason assigned for a new trial is the refusal of the court to allow a motion of the defendant's counsel to strike out the evidence of twelve of the witnesses for the commonwealth, namely: Joseph Krugle, Michael Dombrofski, Anthony Lackasavitch, Frank Gelatosky, Simon Koslosky, Anthony Shepenis, Charles Stenovitch, Clements Sheshensky, Joseph Koslukis, Anthony Borak, Joseph Bultofski and Stanley McClosky; and this on the alleged ground that they did not speak English, but were sworn in that language without the intervention of an interpreter. And still another reason assigned is the refusal of the court to entertain an offer subsequently made to prove that Frank Gelatosky, one of the twelve witnesses above named, was unacquainted with and uninformed as to the oath it was alleged he had taken in the case; that said oath was never repeated to him in his native language; that he could not speak English, and that the matter was brought to the attention of the court and objection raised as soon as discovered. It is proper to state more in detail the proceedings prior to this motion and offer respectively, and the circumstances under which they were made and disallowed. But first, it is only fair to the defendant to say that while the record does not show in what language the oath was administered to the twelve several witnesses in question, it was in fact administered in English without the intervention of an interpreter. These witnesses were severally called and sworn by the prosecution in its case in chief, and severally signified their appreciation of the position they occupied, by voluntarily holding up their right

hands and indicating their undertaking to tell the whole truth under the sanction of the oath, as do ordinary witnesses under like circumstances. There was no manifestation on their part of ignorance in that particular, otherwise the court of its own motion would have directed the administering of the oath through an interpreter. They were of the same nationality as the defendant himself, and their native tongue was likewise his own. Neither he nor his counsel acting for him made any objection whatever to this method of swearing the witnesses. The two former sat at the defendant's table and heard these witnesses testify at length, either directly in English, as was the case with some in whole or in part, or indirectly in their native language duly interpreted into English, as was the case with others, and then each was subjected to cross-examination, some at great length, by the defendant's counsel after the same manner. Most of the two and one half days spent in hearing the case of the commonwealth was occupied in the examination and cross-examination of this particular class of witnesses. After waiting until the commonwealth's case was closed, defendant's counsel moved to strike out the testimony of these witnesses, because they had been sworn in English without an interpreter, and, as counsel averred, because they did not speak English, although he was clearly in error in the latter respect as to some of the witnesses. This motion was overruled, we regarding it sufficient to say at that time that it did not appear that the witnesses did not understand the oath, and that no objection had been previously made on that account. Then came an adjournment of the morning session of the court, and upon its opening in the afternoon, defendant's counsel, by way of a supplement to the overruled motion, and to meet the reasons assigned for overruling it, made a so-called offer, to show that one of the twelve witnesses, viz: Frank Gelatosky, did not understand the oath administered to him; that he could not speak English, and that this matter was brought up as soon as it had been discovered. How, or in what manner this showing was to have been made, was not stated. No witness was called for that purpose, nor was any medium of such proof even referred to. We rejected the proposition of the counsel, announcing that he would not be permitted to thus claim surprise, after sitting by and participating in the examination and cross-examination of

witnesses during the period of several days, and after the commonwealth had closed its case in chief.

Let us consider the situation at the time the rulings in question took place, and the probable effect of such a motion and offer if allowed to prevail. It is to be borne in mind that new trials are not granted to the commonwealth in cases of this character, and that both the motion and the offer took place after the prosecution had closed its case in chief, and before the defense was opened. Had these prevailed, the consequence would have been the elimination from the record, upon technical grounds entirely disregarded by the defense at the time they properly arose, of the vital evidence for the commonwealth directly relating to the issue joined, and the permanent relief of the defendant from the burden of criminal responsibility thus cast upon him, unless perchance, the prosecution, by the license of judicial discretion, could have reached, recalled, resworn and reëxamined the witnesses who may have already departed the court and separated in different directions. We are not convinced that there was error either in the refusal to allow the motion or to entertain the offer in question; nor, in the absence, as is the case here, of any affirmative showing at this time, that this witness or these witnesses testified falsely, whether by reason of the failure to interpret the oath to them or otherwise, do the rulings in question entitle the defendant to a new trial, upon the principle that the crime charged against him being a serious one, he ought not to be denied that consideration where he has suffered in the first trial of the cause on grounds other than technical errors of law. We have no hesitation in concluding that the failure of the defendant and his counsel to interpose any objection to the administering of the oath to the several witnesses referred to, without the interposition of an interpreter, and the delay in raising that objection until after the case of the commonwealth was closed, constituted a waiver of any right the defendant might have had to have the oath interpreted, had the objection been taken when the witnesses were called,—at least to the extent of precluding him from having the evidence stricken from the record in the manner attempted in this case; that the motion to strike out the testimony was properly overruled, and that neither the defendant nor his counsel should be allowed to wait without objection and take the benefit of the

chances of evidence from these witnesses favorable to the defendant, and then, finding it to be otherwise, plead ignorance of the matter sought to be proved by the offer, and thereby seek to eliminate the testimony from the record. Counsel must be held to have knowledge of matters of this character occurring and coming before them during the course of a trial in which they participate, whether in fact ignorant of them or not. If the 'rule were otherwise motions and offers of the character we have been considering would operate as instruments by which the orderly conduct of the trial of causes would be trifled with, and whereby the administration of the law would be brought into deserved disrepute. We do not assent to the proposition of the counsel that no legal right of a defendant charged with murder can be waived by himself or by those who represent him in his presence. Thus in Com. v. Ware, 137 Pa. 465,— which was a case of the conviction of murder of the first degree, —the jurors in being empaneled were examined as to their qualifications without being first sworn to make true answers. No objection was made to this mode of procedure and the prisoner's counsel participated in such examination without asking that the jurors be sworn. The Supreme Court held that had the prisoner requested at the time that the jurors be first sworn, and had that request been refused, it would have been error. But that when the prisoner voluntarily examined the jurors without their being sworn, and without objection or exception, he could not take advantage of it after a trial upon the merits. In that case the court also says: ".It is said that in a capital case the prisoner can waive nothing; that is to say he is not bound by such waiver. This is a mistake in the broad sense in which the proposition is usually stated. There are many things to which his waiver would not bind him; there are, on the other hand, many matters connected with the trial which he may waive." One of the cases put by the court is the defendant's right to waive the challenge of a juror. "But," say the court, "if he challenges the juror for cause he has a right to examine him as to his qualifications, after which, if he has not shown cause, he may challenge peremptorily, or he may waive either form of challenge and allow the juror to take his seat in the box. If this were not so we might have the anomaly of a challenge for cause being abundantly sustained by the juror's

answer; a waiver of the challenge by the prisoner, followed by a motion for a new trial in case of conviction, upon the ground that an incompetent juror had been permitted to serve. A plea in such case that he was not bound by his waiver, would not receive much consideration."

We are not called upon to discuss what the defendant might have shown or been permitted to show in the course of the presentation of his own case, after opening it to the jury, concerning the subjects we have hitherto considered. This is in no way before us. After a careful consideration of the various reasons assigned we are of the opinion that the defendant has had a fair trial, and that he was fairly convicted under the abundant and convincing evidence against him. The motions for new trial and in arrest of judgment are overruled.

*Errors assigned* among others were (1) in overruling motion in arrest of judgment; (2) in refusing to strike out the evidence of certain witnesses; (3) in refusing to allow defendant to show that a witness to whom the oath had not been interpreted did not speak the English language.

*Eugene Ward*, for appellant.—Words in a constitution that do not of themselves denote that they are used in a technical sense are to have their plain, proper, natural and obvious meaning: Phila. v. Masonic Home of Penna., 160 Pa. 572.

It is the duty of courts to give a liberal construction to statutes, and a strict construction to constitutional provisions : Wolcott v. Wigton, 7 Indiana, 44; Brown v. Goben, 122 Indiana, 114.

An offer of evidence must itself disclose all the facts necessary to establish its admissibility.

Where an offer blends irrelevant and inadmissible matters, with a matter relevant and admissible, and it is made and rejected as a whole, the rejection is not error: Sennett v. Johnson, 9 Pa. 335, and Wharton v. Douglas, 76 Pa. 273. These are civil cases and, if the rule stated in them is applicable, it ought not to be summoned to sustain a ruling prejudicial to the interests of a defendant on trial for murder: Com. v. Bezek, 168 Pa. 603 ; Rolland v. Com., 82 Pa. 306.

The defendant could not waive that which is essential to the due and orderly administration of justice : Guykowski v. The

People, 1 Scammon, 476 ; Smith v. Com., 14 S. & R. 69 ; Com. v. Ware, 137 Pa. 465. A prisoner in a capital case is considered as standing on all his rights'; he cannot be considered as waiving anything, nor can his counsel do it for him. They possess neither the power nor the right: Nomaque v. The People, 1 Breese (Ill.), 145 ; 1 Thompson on Trials, sec. 366.

When evidence had been improperly admitted which was calculated to affect the minds of a jury, the error was not cured by the direction of the judge that it should not be regarded: Huntingdon & Broad Top Mountain R. R. v. Decker, 82 Pa. 119.

*D. A. Fell, Jr.,* district attorney, and *Ralph Wadhams,* assistant district attorney, for appellee.—Where one comes to office by color of title his acts are valid when they concern the public: Riddle v. County of Bedford, 7 S. & R. 386 ; Keyser v. McKissan, 2 Rawle, 139 ; Clark v. Com., 29 Pa. 129 ; Campbell v. Com., 96 Pa. 344 ; Shartzer v. School Dist., 90 Pa. 192 ; Gregg Twp. v. Jamison, 55 Pa. 468 ; Com. v. Slifer, 25 Pa. 23.

The presumption of the law is that the sheriff and jury commissioners have legally performed the duties of their office in the absence of evidence to the contrary: Rolland v. Com., 82 Pa. 306.

PER CURIAM, April 19, 1897 :

We are clearly of opinion that all the assignments of error are entirely without merit. They were all considered by the learned judge of the court below in his opinion on the motions for new trial and in arrest of judgment. That opinion is a most exhaustive and elaborate treatment of all the subjects involved in the present contention, and we are well satisfied with its reasoning and conclusions. We do not think it necessary to repeat them and we, therefore, affirm the judgment for the reasons stated in the opinion.

The judgment of the court below is affirmed, and it is ordered that the record be remitted for the purpose of execution.