## Commonwealth v. Dutter.

*Le Roy C. Eddy*, district attorney, and *George B. Munn* and *William Glassman*, for Commonwealth.

*Bordwell & Eldred*, for defendant.

ARIRD, P. J., September 22, 1930.—On January 31, 1930, complaint was made before Clark E. Nelson, justice of the peace, of Warren, Pennsylvania, against the defendant, Guy E. Dutter, M. D. The complaint alleged that the said defendant unlawfully and maliciously by force, or fraud, did take or carry away a female child under the age of ten years with the intent to deprive its parent, said deponent, from having the lawful charge, custody and possession of such child, and the defendant was concealing or detaining such child from the affiant, *i. e.*, the mother of such child.

As the time was about to expire for the defendant to plead the statute of limitations, a special grand jury was called, and on February 8, 1930, the grand jury returned a true bill, charging the defendant with unlawfully taking a child with intent to deprive its parent of possession of such child.

On February 20, 1930, the defendant, by Bordwell & Eldred, his attorneys, moved the court to quash the bill of indictment found in this case, setting forth eight reasons for quashing the same. The first, second, third and fourth reasons for quashing the indictment, in our opinion, are without merit.

The fifth reason reads as follows:

5. The selection of the grand jury for said county to meet the first Monday of March, 1930, was not in compliance with the law, in that one R. L. Ritchie participated in the drawing thereof, he not being a jury commissioner, a clerk of the jury commissioners, nor the sheriff or coroner of said county.

Section 187 of the Act of May 2, 1929, P. L. 1278, reads as follows:

### "Deputy Sheriff.

"The sheriff of each county shall appoint, by deed duly recorded in the office for recording deeds, a chief deputy, whose appointment shall be revocable at pleasure on recording in said office a written revocation thereof.

The chief deputy, during his continuance in office, shall have full power and authority to perform any duty incumbent upon such sheriff, with like effect in law as if such official act had been done by the sheriff in person, regardless of the ability or temporary disability of such sheriff to act, while such sheriff continues in office. Nothing in this section shall operate to relieve such sheriff or his sureties from liability upon their official bond."

It is doubtful if, prior to the time that this act of assembly was passed, the deputy sheriff could assist in drawing a jury, but taking into consideration the title of the act and the plain reading of section 187, together with the numerous acts repealed by the legislature, we think the deputy sheriff had full power and authority to perform the duty that is incumbent upon the sheriff relating to the drawing of juries. While the act of assembly does not especially repeal the Act of 1874, we find in the final repealing clause the following:

"All other acts and parts of acts inconsistent with this act are repealed."

The sixth reason for quashing the indictment is along the same line as the fifth reason, i. e., that the oath required by law relating to drawing jurors was made by R. L. Ritchie, Deputy Sheriff, instead of H. H. Jefferson, Sheriff. While the act provides that the deputy sheriff shall have full power and authority to perform any duty incumbent upon the sheriff with like effect in law as if such official act had been done by the sheriff in person, it is only reasonable to presume that if the law required the sheriff to take an oath prior to the time of selecting a jury, the deputy sheriff should also take an oath prior to the time of selecting a jury, and in fact this it is admitted was done. Consequently, the fifth and sixth reasons for quashing the indictment are dismissed.

We think there is no merit in the eighth reason, as it relates to the order of court made December 17, 1929, relating to filling of the jury wheel. The order, in part, reads as follows:

"It is ordered that the number of jurors, including women jurors, to be selected and placed in the jury wheel for the year 1930, is fixed at six hundred."

The criticism in the eighth reason relates to the words in the order "including women jurors," but the passage of the Nineteenth Federal Amendment granting equal suffrage to women twenty-one years of age and over entitles women to be summoned as jurors, and by the Act of May 5, 1921, P. L. 384, it became the duty of the county commissioners to provide and maintain a separate room or rooms for the accommodation and convenience of women jurors. Consequently, the order made by the court relating to filling the jury wheel in no way prevented the jury commissioners from selecting from the body of the people such jurors as the commissioners deemed fit or suitable persons to serve as jurors.

The seventh reason for quashing the indictment reads as follows:

7. The drawing of the grand jurors in said county for the first Monday of March, 1930, was without law or authority, in that the persons filling the jury wheel for the year 1930 did not, prior to their drawing the names of said grand jurors or at any time since, file in the office of the prothonotary of said county a list of names placed in said wheel, certified as required by law.

On July 7, 1930, testimony was taken and E. B. Whiting, Prothonotary, was called as a witness, and also called upon to produce a list of the jurors, if any, that had been filed in the prothonotary's office as required by the Act of Assembly of March 18, 1874, P. L. 46. The prothonotary testified that he could not produce such a list, as no list had been filed in his office. In exam-

ining the records in the prothonotary's office, we do not find that at any time has it been the practice to file a list of the jurors in the prothonotary's office. This act of assembly, or this section of the act, to wit, section three, seems to have escaped the attention of the jury commissioners and their attorneys as well as the different judges who have held office since the act of assembly was passed, March 18, 1874.

In the argument of this case, counsel called our attention to the decision in Klemmer v. Mount Penn Gravity R. R. Co., 163 Pa. 521. Mr. Justice Dean, of our Supreme Court, wrote a very lengthy opinion. In reading this opinion carefully, while it does not decide the question in the instant case, we find it very clearly indicates that the jury wheel must be filled and jurors drawn from the wheel as provided by the acts of assembly relating to the same.

In Com. v. Haines, 27 Pa. C. C. 81, the opinion was written by McConnell, J., and he decides the very question that is now before us. His decision relates to the third section of the Act of March 18, 1874, P. L. 46. Here he quotes the section of the act. He states that the array must be quashed. In part, his opinion reads as follows:

"The defendant in this case has the right to have that list to see whether the jurors now called are on the list of jurors put in the wheel at the beginning of the year. He cannot have it for the reason that there is no such list. That is a sufficient legal wrong to justify the quashing of the array, and it is accordingly so ordered."

Also, another decision is found in Com. v. Ross, 58 Pa. Superior Ct. 412, where Ingham, P. J., filed an opinion, and a portion of it reads as follows:

"The evidence taken in these cases shows that the jury commissioners did make out a list of the names of persons placed in the jury wheel for the year 1913, that said list was copied into a book kept by the jury commissioners for that purpose, was certified by the sheriff and jury commissioners, and that the book was left with the sheriff for safe-keeping. This was surely not a filing of the list in the prothonotary's office as required by law. . . . We cannot agree with the district attorney that this is a substantial compliance with the requirements of the act of assembly."

While the Superior Court did not pass upon the question raised in the instant case, the lower court, on this very point and other points, quashed the indictment, and at the close of the opinion written by Henderson, J., of our Superior Court, he said:

"The indictment having been quashed the proceeding necessarily falls so far as this indictment is concerned.

"The order is affirmed and the appeal dismissed at the cost of the appellant."

Now, the act of assembly requires that a list of the jurors should be made out by the jury commissioners, properly certified and filed in the office of the prothonotary. This, in fact, is so persons interested can examine it, and if the name of a juror drawn for any term of court is not found on the certified list of jurors placed in the wheel for that year, it is *prima facie* evidence of fraud. Consequently, the Act of 1874, by thus requiring the certifying and filing of such list, provides a safeguard against fraud of this nature. Now, in the instant case the motion to quash the indictment was made at the first opportunity counsel for defendant, or defendant, had after the bill of indictment had been returned. If this case had been called for trial, the defendant would have had no knowledge whether or not the names of the jurors called had been duly placed in the jury wheel by the jury commissioners, or whether the jurors had simply been summoned from the body of the people without

having their names properly placed in the jury wheel by the jury commissioners. Consequently, the indictment must be quashed. The defendant in this case had a right to know whether or not the jurors called were from a list of jurors that had been put in the jury wheel at the beginning of the year. In this he was deprived of a legal right, a right which was provided by the third section of an Act of Assembly approved March 18, 1874. That is a sufficient legal wrong to justify the court in quashing the indictment, and it is accordingly so ordered.     From Joseph H. Goldstein, Warren, Pa.